# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

DANIEL POOLE,

      Plaintiff,

      v.                                     Case No. 07-C-086

SGT. CURLER and CAPTAIN BIENISH,

      Defendants.

## DECISION AND ORDER

The plaintiff is proceeding in forma pauperis in this case under 28 U.S.C. § 1983. He is proceeding on a Fourteenth Amendment claim based on allegations set forth in his complaint. Now before the court is the defendants' motion for summary judgment.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned to the Honorable Lynn Adelman, according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). During the initial processing of the case, the parties consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.), and the case was transferred to this court.

## I. BACKGROUND OF THE CASE

The plaintiff, Daniel Poole ("Poole"), was incarcerated at the Milwaukee Secure Detention Facility (MSDF) at all times relevant. The defendants, Sergeant Curler, who is now a lieutenant ("Curler"), and Captain Bienish were employed at MSDF. It appears from defendants' pleadings

that the correct spelling of Captain Bienish's last name is Benisch.  However, the court will refer to him as "Bienish" for consistency with the docket.

In a decision and order dated May 14, 2009, the court granted Poole's motion to dismiss court-appointed counsel and denied Poole's motion to appoint different counsel.  The court also directed Poole to file a pro se response to the defendants' motion for summary judgment on or before Wednesday, July 15, 2009.  The court mailed the order to Poole's last known address, but it was returned to the court as undeliverable.  Several weeks later, Poole contacted the court regarding the status of the case, and the court sent Poole a copy of the order, which directed him to file a response to the motion for summary judgment by July 15, 2009.  As of today's date, the court's most recent correspondence to Poole has not been returned as undeliverable.  Nor has the court received a new address from Poole or a response to the defendants' motion for summary judgment.  Thus, the court will consider the defendants' motion for summary judgment without a response from Poole.  Although the defendants submitted a letter on August 20, 2009, asking the court to dismiss this case for failure to prosecute, the court will evaluate the merits of Poole's claims and the defendant's motion for summary judgment.

## II.  SUMMARY JUDGMENT STANDARD OF REVIEW

Under Fed.R.Civ.P. 56(c), summary judgment is proper when the pleadings and other submissions filed in the case show that there is no genuine issue regarding any material fact and that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  After adequate time for discovery, summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id.  The existence of a factual

dispute between the parties will not defeat a properly supported motion for summary judgment unless the facts in dispute are those which might affect the outcome or resolution of issues before the court. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A genuine issue of material fact exists only where a reasonable finder of fact could make a finding in favor of the non-moving party. Id. at 248; Santiago v. Lane, 894 F.2d 218, 221 (7th Cir. 1990). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine need for trial and summary judgment is proper. Matsushita Elec. Indus. Co., Lt. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex, 477 U.S. at 323. Once this burden is met, the non-moving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. Id. at 322-23. When the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. Anderson, 477 U.S. at 267; see also, Celotex Corp., 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial"). If a plaintiff merely repeats under oath the same general allegations contained in the complaint, this is not enough to convert claims into evidence sufficient to maintain a claim at the summary judgment stage. Wudtke v. Davel, 128 F.3d 1057, 1061 (7th Cir. 1997).

Case 2:07-cv-00086-AEG   Filed 09/02/09   Page 3 of 9   Document 72

To defeat summary judgment, the non-moving party must engage in more than a mere swearing match. Matter of Wade, 969 F.2d 241, 245 (7th Cir. 1992). While the resolution of factual disputes, the sufficiency of evidence developed from the facts, and the relative credibility of the parties are matters generally left to a jury or fact-finder at trial, summary judgment is nonetheless appropriate where the evidence is so one-sided that one party must prevail as a matter of law. Anderson, 477 U.S. at 251-252. If a party's allegations are based on mere conjecture, and are merely colorable or conclusory, and if the evidence supporting those allegations is not significantly probative as to material facts at issue, denial of a motion for summary judgment is not justified. Id., at 249-50.

## III. FACTS

On or about October 29, 2006, Poole approached defendant Curler and asked to be placed in protective custody. Curler asked Poole why he wanted to be in protective custody, and Poole stated that he was having problems with "a white guy," another inmate on the same unit in the jail. Curler contacted Bienish for approval, and Bienish informed Curler that he did not have the authority to approve protective confinement and that Poole should make a request to the Security Director, who has the authority. Bienish also expressed to Curler that the information Poole gave Curler was not sufficient to warrant placing Poole in protective confinement.

Curler told Poole to make the request to the Security Director, and Poole asked Curler what he should do if he was attacked or assaulted. Curler advised Poole not to fight back and to try to alert staff. Curler also advised Poole that he could fill out an interview request slip to the security director with a statement that included his reason why he wanted to be transferred to another unit or placed in protective custody.

4

On October 30, 2006, Poole was issued a conduct report for an alleged altercation. Curler remembers being contacted to write a statement regarding the conduct report, but he was off duty at the time the report was written. Bienish was out of the office from October 30, 2006 until November 5, 2006.

Correctional officer Michael Steffens ("Steffens") remembers the incident involving Poole that occurred on or about October 30, 2006. An inmate named Williams approached Steffens and told him that another inmate was having a seizure in the rec room. Steffens immediately went to the rec room and saw Poole lying on the ground. Steffens asked Poole if he was ok, and Poole responded that his head hurt. When Steffens asked Poole what had happened, Poole said that he thought he was hit. He indicated that he was hit on the side of his head and pointed to the left side of his head by the temple area. Steffens inquired whether Poole knew who had hit him, and Poole stated that he thought it was a skinny Latino guy. When Lieutenant Steven Johnson ("Johnson") arrived and asked Poole against who hit him, Poole again stated that it was a Latino guy and that three or four guys were walking laps around the ping pong table and that he was blind sided. An employee of the Health Services Unit (HSU) arrived. Poole said he could get up and walk to HSU, and he did. Steffens recalls that Pool was placed in temporary lock-up pending an investigation into his allegations that he was hit by a Latino inmate.

Steffens did not participate in the entire investigation of the incident, but he recalls Johnson's interview with inmate Williams. Steffens recalls Williams giving a pretty convincing statement that Poole fell on the floor and appeared to be having a seizure. Williams did not see anyone strike Poole. Johnson interviewed all five of the inmates who were in the rec room at the time of the incident. They all stated that they did not know what happened and that Poole just fell down and

5

they thought he was having a seizure so they went to get help. After interviewing the inmate Poole was claiming hit him, Johnson determined that there was no validity to Poole's claim. Johnson also learned through interviews with other inmates who were not in the rec room at the time of the incident that Poole had made a gambling bet, that he owed a lot of other inmates canteen items and that those were the reasons Poole wanted to get off the unit.

## IV. ANALYSIS

At screening, the plaintiff was allowed to proceed on a claim under the Fourteenth Amendment that Curler and Bienish were informed that he was in danger of being attacked and failed to take action to protect him from serious injury. Defendants argue that they are entitled to summary judgment because there is no basis in the record for a finding that Poole was incarcerated under conditions posing a substantial risk of serious harm and or a finding that defendants Curler and Bienish were deliberately indifferent to the risk of harm to Poole.

Poole previously had appointed counsel in this case. While she was representing Poole, counsel reviewed the defendants' motion for summary judgment and recent cases from the United States Court of Appeals for the Seventh Circuit regarding actions against correction officers. Counsel submitted a letter to the court in which she relayed her conclusion that there was no good faith basis to oppose the motion for summary judgment. Poole has failed to submit a pro se response.

In evaluating the defendants' motion for summary judgment, the court will utilize cases analyzing failure to protect claims under both the Eighth and Fourteenth Amendments. See Whiting v. Marathon County Sheriff's Dept., 382 F.3d 700, 703 (7th Cir. 2004) ("The distinction is immaterial since the legal standard for a § 1983 claim is the same under either the Cruel and Unusual

6

Punishment Clause of the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment.").

"Because officials have taken away virtually all of a prisoner's ability to protect himself, the Constitution imposes on officials the duty to protect those in their charge from harm and from other prisoners." Mayoral v. Sheahan, 245 F.3d 934, 938 (7th Cir. 2001). "Yet, a prison official does not violate the Eighth Amendment every time an inmate gets attacked by another inmate. Prisons, after all, are dangerous places full of people who have demonstrated aggression." Dale v. Poston, 548 F.3d 563, 569 (7th Cir. 2008). Thus, "an inmate has no claim 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "The deliberate indifference test therefore has both objective and subjective prongs, the former requiring a grave risk and the latter requiring actual knowledge of that risk." Dale, 548 F.3d at 569 (citing Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)). "Once prison officials know about a serious risk of harm, they have an obligation 'to take reasonable measures to abate it.'" Dale, 548 F.3d at 569 (quoting Borello v. Allison, 446 F.3d 742, 747 (7th Cir. 2006)). However, an "official's response may be reasonable even if it fails to aver the harm." Dale, 548 F.3d at 659.

In Dale, the Seventh Circuit continued:

> Another way to think of it: picture an inmate with a cobra in his cell. If the prison officials "know that there is a cobra there or at least that there is a high probability of a cobra there, and do nothing, that is deliberate indifference." Billman v. Ind. Dep't of Corrections, 56 F.3d 785, 788 (7th Cir. 1995). The precise identity of the threat, be it a cobra or a fellow inmate, is irrelevant. A prison official "cannot escape liability by showing that he did not know that a plaintiff was

7

especially likely to be assaulted by a specific prisoner who eventually committed the assault." Mayoral v. Sheahan, 245 F.3d at 939. On the other hand, as the vagueness of that threat increases, the likelihood of "actual knowledge of impending harm" decreases. See Fisher v. Lovejoy, 414 F.3d 659, 662 (7 Cir. 2005). So, too, does the official's ability to respond. The ultimate measure of the adequacy of the response is therefore reasonableness in light of the surrounding circumstances.

Id.

Here, it is unclear whether there was a cobra lurking. In fact, the evidence suggests that Poole was not attacked but, rather, fell down and had some type of seizure. The defendants have set forth evidence that shows the objective prong has not been satisfied, and Poole has not responded.

Moreover, there is a significant amount of evidence that indicates that Poole's request for protective custody was for reasons other than safety. There is no evidence that either defendant was aware of facts from which they could have drawn an inference of substantial harm, let alone evidence that they actually drew that inference. Thus, the subjective prong has not been met either.

When Poole came to Curler and asked to be placed in protective custody, he did not specify a particular inmate or inmate who had threatened him. Even if the court refers to Poole's sworn complaint and its averment that he had been marked by two inmates because he had testified against their friends in a drug case, that is not enough. As the Seventh Circuit said of the defendants in Dale, "for all they knew, Dale was being harassed by a garter snake. Irritating, yes. Deadly, no." Id. The court found that "vague statements that inmates were 'pressuring' him and 'asking questions' were simply inadequate to alert officers to the fact that there was a true threat at play." Id. Similarly, in Grieveson v. Anderson, 538 F.3d 763, 776 (7th Cir. 2008), an inmate who "told jail officials only that he was afraid and that he wanted to be moved" failed to put those officials on notice of an actual

8

threat. At best, Poole's statements to Curler and Beinish were akin to the statements made by Dale and Grieveson. They were insufficient to trigger a response.

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment (Docket No. 53) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment dismissing plaintiff's complaint and this case.

Dated at Milwaukee, Wisconsin this 2nd day of September, 2009.

BY THE COURT:

s/AARON E. GOODSTEIN
United States Magistrate Judge

9